1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAKAN CHAMEL MILLS, | CASE NO. 1:16-cv-0689- MJS (PC) |
| Plaintiff, | **ORDER REQUIRING PLAINTIFF TO FILE EITHER AN AMENDED COMPLAINT OR A NOTICE OF HIS WILLINGNESS TO PROCEED ONLY ON COGNIZABLE CLAIMS** |
| v. | |
| RYAN MILLER, et al., | |
| Defendants. | **(ECF NO. 1)** |
| | **THIRTY DAY DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff has consented to magistrate judge jurisdiction. (ECF No. 5.) No other parties have appeared in this action.

Plaintiff's complaint is before the Court for screening.

**I.     Screening Requirement**

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

1    **II.    Pleading Standard**

2    Section 1983 "provides a cause of action for the deprivation of any rights,

3    privileges, or immunities secured by the Constitution and laws of the United States."

4    Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).

5    Section 1983 is not itself a source of substantive rights, but merely provides a method for

6    vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94

7    (1989).

8    To state a claim under § 1983, a plaintiff must allege two essential elements:

9    (1) that a right secured by the Constitution or laws of the United States was violated and

10    (2) that the alleged violation was committed by a person acting under the color of state

11    law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d

12    1243, 1245 (9th Cir. 1987).

13    A complaint must contain "a short and plain statement of the claim showing that

14    the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations

15    are not required, but "[t]hreadbare recitals of the elements of a cause of action,

16    supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S.

17    662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

18    Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief

19    that is plausible on its face." Id. Facial plausibility demands more than the mere

20    possibility that a defendant committed misconduct and, while factual allegations are

21    accepted as true, legal conclusions are not. Id. at 677-78.

22    **III.    Plaintiff's Allegations**

23    Plaintiff is housed at California Correctional Institution ("CCI") in Tehachapi,

24    California, where the acts giving rise to this complaint occurred. He names as

25    Defendants CCI Correctional Officers ("CO") Ryan Miller, E. Souvannakham, L. Pinedo,

26    R. Ryan, and A. Richter; CCI Sergeant D. Bonffil; CCI Warden Karen Holland; and

27

28

1    Jeffrey A. Beard, Director of the California Department of Corrections and Rehabilitation
2    ("CDCR").

3          Plaintiff's allegations may be summarized essentially as follows.

4          On June 8, 2015, CO Miller found a razor blade in Plaintiff's cell. Plaintiff admitted
5    to possessing the blade, he was issued a rules violation report ("RVR") for possession of
6    dangerous contraband, and he was found guilty at the hearing on the RVR. He was
7    assessed a 30-day loss of Behavioral / Word credits.[1] (ECF No. 1 at 16.)

8          That same day, CO Miller falsely complained to Sgt. Bonffil that Plaintiff
9    threatened CO Miller after the razor blade was found. Plaintiff denies having threatened
10   CO Miller in any way.

11         Upon hearing of the threat, Sgt. Bonffil instructed COs Clark and Souvannakham
12   to escort Plaintiff to a holding cell where COs Pinedo and Ryan and Sgt. Bonffil were
13   waiting. There, Plaintiff was assaulted by these officers, driven to the ground head first,
14   and lost consciousness at one point. During this assault, Sgt. Bonffil said, "Why did you
15   assault my officer?" Plaintiff was then escorted to a holding cell in Receiving and
16   Release ("R&R") by COs Pinedo and Ryan and Sgt. Bonffil where he was assaulted
17   again. Sgt. Bonffil told Plaintiff, "The story is, you assaulted my officer and we took you
18   down, got it?" He also said, "There's nowhere you can go where we can't touch you."

19         Sgt. Bonffil and COs Miller, Clark, Souvannakham, Pinedo, and Ryan completed
20   Crime/Incident Reports following this incident, each falsely accusing Plaintiff of battery
21   on a peace officer resulting in the use of force. CO Richter, who was providing gun
22   coverage in the yard, also completed a Crime/Incident Report falsely claiming that he
23   observed Plaintiff kick one of the officers who was escorting him to R&R.

24         Dr. El Said examined Plaintiff immediately following this assault and said, "Your
25   wounds are superficial, and if I have to come and examine you again it's going to be a

26

---

27   [1] Though the terms of Plaintiff's confinement are unclear, the attachments to the complaint reflect that he
     is eligible for a parole hearing on July 26, 2029 and/or may in fact be released on that date. (See ECF No.
28   1 at 13.)

3

1  prostate exam." Plaintiff refused any further medical treatment that night in light of Dr. El

2  Said's statement.[2] He also declined to make a statement to the nurse in fear of further

3  assaults.

4        Plaintiff was then placed in administrative segregation and "Mirandarised" by CO

5  Pinedo with CO Ryan as a witness. Plaintiff claims he did not receive the ad-seg lockup

6  placement order or Miranda Rights form until several days later (on June 18, 2015).

7  Plaintiff makes no other claims as to his placement in ad-seg.

8        On June 9, 2015, Plaintiff submitted a medical request form, and on June 11,

9  2015, he was examined by medical staff who diagnosed a blunt head trauma, blurred

10  vision with photosensitivity, cerebral hemorrhage, and concussion syndrome. Plaintiff

11  was immediately sent to an outside hospital for a CT scan of the head. Plaintiff has

12  suffered lasting injuries as a result of the assault.

13        Plaintiff never received an RVR for threatening CO Miller. He did, however,

14  receive an RVR on June 11, 2015, for Battery on a Peace Officer. A hearing on this RVR

15  was held on July 12, 2015, and Plaintiff was found guilty. He was assessed 150 days

16  credit forfeiture.

17        Plaintiff names Warden Holland and CDCR Director Beard "for not exercising due

18  diligence in their investigation of the assault and battery of Plaintiff."

19        By way of relief, Plaintiff seeks "protection from further injury, all defendants held

20  responsible as well as accountable for their actions toward the plaintiff. Also to be

21  awarded punitive and exemplary damages, injunctive and declaratory relief."

22  **IV.**    **Analysis**

23      **A.**    **Heck Bar**

24        In Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), the Supreme Court held that

25  to recover damages for "harm caused by actions whose unlawfulness would render a

26  conviction or sentence invalid," a § 1983 plaintiff must prove that the conviction or

27

28  [2] Plaintiff brings suit against Dr. El Said in a separate suit, Mills v. El Said, 1:16-cv-0731-MJS.

sentence was reversed, expunged, or otherwise invalidated. The Heck bar preserves the rule that federal challenges, which, if successful, would necessarily imply the invalidity of incarceration or its duration, must be brought by way of petition for writ of habeas corpus, after exhausting appropriate avenues of relief. Muhammad v. Close, 540 U.S. 749, 750–751 (2004).

However, "challenges to disciplinary proceedings are barred by Heck only if the § 1983 action would be seeking a judgment at odds with [the prisoner's] conviction or with the State's calculation of time to be served." Nettles v. Grounds, No. 12-16935, -- F.3d --, 2016 WL 4072465, slip op. at 12 (9th Cir. July 26, 2016) (en banc), citing Muhammad, 540 U.S. at 754-55. "If the invalidity of the disciplinary proceedings, and therefore the restoration of good-time credits, would not necessarily affect the length of time to be served, then the claim falls outside the core of habeas and may be brought in § 1983." Id.; see, e.g., Pratt v. Hedrick, 2015 WL 3880383, *3 (N.D. Cal. June 23, 2015) (§ 1983 challenge to disciplinary conviction not Heck-barred where "the removal of the rule violation report or the restoration of time credits" would not necessarily result in a speedier release for inmate with indeterminate life sentence and no parole date).

Moreover, the Ninth Circuit has found that "a conviction [for resisting arrest] does not bar a [42 U.S.C. § 1983] claim for excessive force under Heck when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.'" Hooper v. Co. of San Diego, 629 F.3d 1127, 1132 (9th Cir. 2011). Thus, by extension, if a plaintiff alleges a scenario whereby both the defendant acted with excessive force and the prison disciplinary infraction is valid, Heck is inapplicable. See Brown v. Holland, 2014 WL 1339687, at *3 (N.D. Cal. Mar. 28, 2014); William v. Young, 2014 WL 505184, at *4 (E.D. Cal. Jan. 24, 2014) (noting that if a reasonable fact finder could find the plaintiff violated Cal. Code Regs. tit. 15, § 3005 and the defendant had used excessive force, the excessive force finding would not necessarily imply invalidity of the disciplinary conviction, and thus Heck is inapplicable).

It does not appear at this time that Plaintiff's claims are barred by <u>Heck</u> because there is no indication that success in this action would necessarily result in a speedier release for Plaintiff, who is not scheduled for release or a parole board hearing until July 26, 2029. Additionally, Plaintiff does not seek expungement of the R&R related to the excessive force incident or a restoration of good time credits. <u>See</u> <u>Muhammad</u>, 540 U.S. at 753. Finally, even if Plaintiff is guilty of a rules violation which justified some use of force, the force actually used could well exceed what was necessary and thus be excessive. Accordingly, the Court does not find that this action is barred by <u>Heck</u> under the circumstances now before it.

### B.    Eleventh Amendment Immunity

Plaintiff does not clarify whether he is bringing suit against the Defendants in their official capacities. In the event that he is, Plaintiff's claim for damages is barred. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." <u>Aholelei v. Dept. of Public Safety</u>, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities, <u>Hafer v. Melo</u>, 502 U.S. 21, 30 (1991); <u>Porter v. Jones</u>, 319 F.3d 483, 491 (9th Cir. 2003), or suits for declaratory or injunctive relief brought against state officials in their official capacities, <u>Austin v. State Indus. Ins. System</u>, 939 F.2d 676, 680 fn.2 (9th Cir. 1991).

### C.    Due Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." <u>Sandin v. Conner</u>, 515 U.S. 472, 483-84 (1995). Liberty interests created by

6

state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

### 1.    False Accusations

Insofar as Plaintiff alleges that CO Miller falsely accused him of issuing a threat and that Sgt. Bonffil and COs Miller, Clark, Souvannakham, Pinedo, Ryan, and Richter falsified Crime/Incident Reports leading to a baseless RVR and the finding of guilt at the hearing on the RVR, he cannot state a claim. The issuance of a false RVR does not, in and of itself, support a claim under section 1983. See e.g., Ellis v. Foulk, 2014 WL 4676530, at *2 (E.D. Cal. 2014) ("Plaintiff's protection from the arbitrary action of prison officials lies in 'the procedural due process requirements as set forth in Wolff v. McDonnell.'") (citing Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)); Solomon v. Meyer, 2014 WL 294576, at *2 (N.D. Cal. 2014) ("[T]here is no constitutionally protected right to be free from false disciplinary charges.") (citing Chavira v. Rankin, 2012 WL 5914913, at *1 (N.D. Cal. 2012) ("The Constitution demands due process, not error-free decision-making.")); Johnson v. Felker, 2013 WL 6243280, at *6 (E.D. Cal. 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under section 1983.") (citing Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) and Freeman v. Rideout, 808 F.2d 949, 951-53 (2d. Cir. 1986)).

### 2.    Ad-Seg Placement

The Ninth Circuit has held that California statutes and prison regulations create a liberty interest in freedom from administrative segregation and has spelled out the process due before a prisoner may be segregated for administrative reasons. See Toussaint v. McCarthy, 801 F.2d 1080, 1098, 1100 (9th Cir. 1986), overruled in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). Toussaint requires prison officials to comply with the following procedures when they initially determine whether a

1   prisoner is to be segregated for administrative reasons: (1) they must hold an informal

2   nonadversary hearing within a reasonable time after the prisoner is segregated, (2) the

3   prisoner must be informed of the charges against him or the reasons segregation is

4   being considered, and (3) the prisoner must be allowed to present his views. See

5   Toussaint, 801 F.2d at 1100. Due process does not require detailed written notice of

6   charges, representation by counsel or counsel-substitute, an opportunity to present

7   witnesses, a written decision describing the reasons for placing the prisoner in

8   administrative segregation or disclosure of the identity of any person providing

9   information leading to placement of a prisoner in administrative segregation. See id. at

10  1100-01. Accord Wilkinson v. Austin, 545 U.S. 209, 228-29 (2005) (determining that

11  prisoners are constitutionally entitled only to the informal, non-adversary procedures set

12  forth in Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1 (1979), and

13  Hewitt v. Helms, 459 U.S. 460 (1983)1, prior to assignment to "supermax" facility).

14          Plaintiff appears to assert a due process claim based on the procedures followed

15  when he was placed in ad-seg. None of these allegations, however, implicate any of the

16  limited procedural rights due to him. The attachments to the pleading reflect that officials

17  convened a nonadversarial hearing within a reasonable time after Plaintiff's initial

18  segregation, and Plaintiff was there informed of the reasons for his segregated

19  placement and provided an opportunity to present his views. See Toussaint, 801 F.2d at

20  1098. No more is required under federal due process standards. Id., accord Bruce v.

21  Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003). Accordingly, his due process claim fails.

22          **D.      Eighth Amendment Excessive Force**

23          The Eighth Amendment protects prisoners from inhumane methods of

24  punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465

25  F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates

26  the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v

27  McMillian, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be

28

1  restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter,

2  sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33

3  (1994) (quotations omitted). For claims of excessive physical force, the issue is "whether

4  force was applied in a good-faith effort to maintain or restore discipline, or maliciously

5  and sadistically to cause harm." Hudson, 503 U.S. at 7. Although de minimis uses of

6  force do not violate the Constitution, the malicious and sadistic use of force to cause

7  harm always violates the Eighth Amendment, regardless of whether or not significant

8  injury is evident. Hudson, 503 U.S. at 9-10; Oliver v. Keller, 289 F.3d 623, 628 (9th Cir.

9  2002).

10      Plaintiff has stated a cognizable claim for excessive force in violation of the Eighth

11  Amendment against Defendants Sgt. Bonffil and COs Clark, Souvannakham, Pinedo

12  and Ryan for their respective roles in assaulting Plaintiff in the holding cell. He also

13  states an excessive force claim against Sgt. Bonffil and COs Pinedo and Ryan for their

14  respective roles in assaulting Plaintiff after he was taken to R&R. However, Plaintiff has

15  not stated a claim against any other Defendant for excessive force in violation of the

16  Eighth Amendment. Specifically, Plaintiff has not alleged that CO Miller or CO Richter

17  applied any force to Plaintiff, through physical contact or otherwise. "If there has been no

18  physical contact or any physical impact, there is no claim for excessive force." Jacobs v.

19  Woodford, 2010 WL 3957498, at *4 (E.D. Cal. Oct. 8, 2010). Accordingly, his claims

20  against these latter two Defendants will be dismissed.

21      **E.      Supervisory Liability**

22      Plaintiff's claims against Defendants Warden Holland and Director Beard are

23  based on their alleged investigation into the assault. Plaintiff asserts that they are "guilty

24  of adding and abetting" by failing to investigate properly.

25      A supervisor may be held liable when he or she is put on notice of wrongful

26  conduct and fails to investigate or correct the violation. Taylor v. List, 880 F.2d 1040,

27  1046 (9th Cir. 1989). Where a plaintiff alleges a constitutional deprivation due to a failure

28

to train or supervise, to prevail the plaintiff must demonstrate an affirmative link between the deprivation and the adoption of a plan or policy, express or otherwise, showing the authorization or approval of such misconduct. Bergquist v. County of Cochise, 806 F.2d 1364, 1369-70 (9th Cir.1986), disapproved of on other grounds Canton v. Harris, 489 U.S. 378 (1989). The required causal connection between supervisory conduct and the deprivation of a constitutional right is established either by direct personal participation or by setting in motion a "series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Id. at 1370.

Plaintiff here does not allege that Defendants Holland or Beard personally participated in the deprivation of his rights, or that they were put on notice of wrongful conduct and failed to correct the violation, or that they implemented a policy that caused Plaintiff harm. Plaintiff's sole allegation is that these Defendants, in their role as supervisors, failed to properly investigate the assault. This allegation, standing alone, does not state a claim. Accordingly, the claims against these Defendants will be dismissed.

**V.    Conclusion and Order**

In sum, Plaintiff states an Eighth Amendment excessive force claim against Defendants Sgt. Bonffil and COs Clark, Souvannakham, Pinedo, and Ryan. All other claims and Defendants shall be dismissed. Plaintiff may proceed on the complaint as screened in this Order, or he may file an amended complaint.

If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

1    Plaintiff should note that although he has been given the opportunity to amend, it

2    is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th

3    Cir. 2007). Plaintiff should carefully read this Screening Order and focus his efforts on

4    curing the deficiencies set forth above.

5    Finally, Plaintiff is advised that Local Rule 220 requires that an amended

6    complaint be complete in itself without reference to any prior pleading. As a general rule,

7    an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d

8    55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no

9    longer serves any function in the case. Therefore, in an amended complaint, as in an

10    original complaint, each claim and the involvement of each defendant must be

11    sufficiently alleged. The amended complaint should be clearly and boldly titled "First

12    Amended Complaint," refer to the appropriate case number, and be an original signed

13    under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P.

14    8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a

15    right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations

16    omitted).

17    Accordingly, it is HEREBY ORDERED that:

18    1.    Within thirty (30) days from the service of this order, Plaintiff must either:

19    a.  File an amended complaint curing the deficiencies identified by the

20    Court in this order, or

21    b.  Notify the Court in writing that he does not wish to file an amended

22    complaint and that he is willing to proceed only on the claims found to

23    be cognizable in this order;

24    2.    The Clerk's Office shall send Plaintiff (1) a blank civil rights amended

25    complaint form and (2) a copy of his Complaint filed May 16, 2016;

26

27

28
11

3.     If Plaintiff fails to file an amended complaint or notify the Court in writing that he wishes to proceed only on his cognizable claim, in compliance with this order, the Court will dismiss this action.

IT IS SO ORDERED.

Dated:   August 19, 2016                    /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE

12